59 So.2d 49 (1952)
McQUEEN
v.
M. & J. FINANCE CORP.
Supreme Court of Florida, Division A.
May 20, 1952.
Robertson & Robertson and Dexter & Conlee, Sarasota, for appellant.
Rosin, Paderewski & Lewis, Sarasota, for appellee.
THOMAS, Justice.
At the outset we will relate the facts that brought about this controversy. One William E. Taylor, Jr., borrowed money from the appellee giving a note to evidence the debt and securing the note by a mortgage on a Ford automobile he owned. All this was done in South Carolina where the mortgagor lived at the time. The mortgage, which was recorded in the foreign state, has not been satisfied, the debt not having been paid.
Later, Taylor brought the car to Florida and sold it to appellant. Before completing the sale the purchaser called the office of the Motor Vehicle Commissioner of Florida and was told that there were no liens of record there against the car. Thereupon, appellant paid for the car and received from Taylor a bill of sale warranting it to be free of incumbrances, and a certificate of ownership issued by the state of South Carolina.
The same day appellant sold the car to one William T. Robinson, Jr., but did not then deliver to the purchaser a certificate of title from the State of Florida. A few days afterward appellee filed in the office of the Motor Vehicle Commissioner of Florida a notice of its lien.
Next, appellee instituted suit against appellant, Taylor and Robinson to foreclose its chattel mortgage. In that case the chancellor held that Robinson was a bona fide purchaser and relief was denied without prejudice to the right of appellee to proceed against appellant for damages. The present action for damages was then brought on the theory that appellant had destroyed appellee's lien and had converted the security. In defense the circumstances we have recounted about the inquiry in Tallahassee, the absence of any information on the South Carolina certificate about any lien, were plead. The appellant also stressed the lateness of the recordation of the lien in this state.
*50 The action culminated in a decision that appellant was not a bona fide buyer because of the provisions of Section 319.22, Florida Statutes 1949, and F.S.A., and a judgment against appellant for the value of the security.
The first question posed by appellant is predicated on the assertion that he had no knowledge or notice of the mortgage, and having none, could not be held accountable for conversion. But there were circumstances we shall relate that should have made him more wary.
The appellant evidently made no inquiry about a record of lien in South Carolina but accepted the representations of Taylor that the title to the property was free and clear. Conceivably, had the matter been pursued with patience and perseverance it would have been discovered that the mortgage was recorded in Spartanburg, South Carolina, the law of that state providing that such liens be recorded in the counties. The car bore license plates of that state.
Under Section 319.28, Florida Statutes 1949, and F.S.A., the commissioner, in certain instances irrelevant here, may upon surrender of a prior title certificate or submission of satisfactory proof of ownership issue to an appellant a certificate of title showing liens or the absence of them.
Section 319.21, Florida Statutes 1949, and F.S.A., contains provisions inhibiting the disposal of a motor vehicle without delivering to the purchaser a certificate of title showing title in the seller, and prohibits the purchase, or transportation, into this state, except for temporary use, of a motor vehicle without obtaining such a certificate. A dealer may, however, reassign an existing certificate of title, or may, if there is no certificate in existence, note that the fact and show the name and address of the person from whom the vehicle was purchased on the face of an application for an initial certificate.
The former statute was enacted to cover transfers by operation of law; the latter to establish the necessity for certificates of title, generally.
We have digested these two sections of the statutes because Section 319.22, Florida Statutes 1949, and F.S.A., which the court held controlled the present cause, was intended to apply in cases not regulated by those sections. It specifies that no person acquiring a motor vehicle from the owner shall get marketable title until he shall have had issued to him a certificate of title; also, that no waiver or estoppel shall work in favor of such person against one having possession of the certificate of title, or an assignment of it for a valuable consideration. There follows this language: "Except as otherwise provided herein, no court * * * shall recognize the right, title, claim or interest of any person in or to any such motor vehicle, * * * sold * * * or mortgaged * * * unless evidenced by and on a certificate of title duly issued * * *." The title to this section and its content indicate that it was designed to regulate transfers of title.
In referring to Section 319.22 as authority for his decision the judge merely said that by virtue of that law the defendant, appellant, was not a bona fide purchaser.
The appellant seems to have relied implicitly upon the representations of Taylor, without inquiring about the status of the title except from the office of the Florida Motor Vehicle Commissioner, although it was clear that Taylor had just removed from South Carolina to Florida. He accepted, besides the bill of sale, a certificate of title from the foreign state. It was only after exchange of those papers for the purchase price that appellant sought an original certificate from the authorities in this state. Incidentally, the appellee had its lien recorded here, immediately it learned of Taylor's change of residence.
Appellant was charged with knowledge of the provisions of Chapter 319, Florida Statutes 1949, and F.S.A. It would be unfeasible to detail the steps necessary in all situations to secure a certificate of title, but from a minute examination of the appropriate provisions we have concluded that he disregarded the requirements that were calculated to afford protection to all like him who purchase automobiles.
In scrutinizing the law, with the facts here in mind, we do not find that appellant *51 so complied with it as to escape the penalty for his own carlessness and his misplaced confidence in Taylor.
Affirmed.
SEBRING, C.J., and TERRELL and HOBSON, JJ., concur.